UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
MARK S. KIRSCHNER, as Trustee of  :
the Refco Litigation Trust,        :
                                   :
            Plaintiff,             :        11 Civ. 8250 (JSR)
                                   :
       -v-                         :        OPINION AND ORDER
                                   :
JOHN D. AGOGLIA, et al.,           :
                                   :
            Defendants.            :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

        On November 15, 2011, defendants Sukhmeet "Micky"

Dhillon, the MSD Family Trust, and Eric Lipoff (collectively,

"Movants") moved to withdraw the reference to the Bankruptcy

Court of the underlying adversary proceeding brought against them

by plaintiff Mark Kirschner, Trustee of the Refco Litigation

Trust in the Refco bankruptcy proceeding (and in the related

Refco Multi-District Litigation pending before this judge, see

generally In re Refco Sec. Litig., 07 MDL 1902 (S.D.N.Y.)). In

the adversary proceeding, the Trustee had brought fraudulent

conveyance and unjust enrichment claims against the Movants, and

the Movants had moved to dismiss those claims. After hearing oral

argument on the motion to withdraw the reference, this Court

issued an Order on December 16, 2011, withdrawing the reference

for the limited purpose of addressing two of the questions

presented in Movants' motion: (1) whether after the United States

Supreme Court's decision in Stern v. Marshall, 131 S. Ct. 2594

(2011) -- which held that only an Article III court can finally

resolve a state law tortious interference claim that was asserted in a bankruptcy proceeding -- the Bankruptcy Court can finally resolve the Trustee's claims; and (2) if the Bankruptcy Court cannot finally resolve those claims, whether the Bankruptcy Court can still be utilized to recommend findings of fact and conclusions of law for the District Court to consider.

Having now fully considered the parties' briefs, notices of supplemental authority, oral arguments, and the opinions of the various district and bankruptcy courts around the country likewise attempting to reconcile Stern v. Marshall with settled bankruptcy practice, the Court, for the reasons that follow, answers the questions thusly: (1) Under the doctrine of Stern v. Marshall, the Bankruptcy Court lacks the constitutional authority to enter final judgment on the Trustee's claims against the Movants, and therefore these claims must be adjudicated by an Article III court. (2) Nonetheless, the Bankruptcy Court does have lawful authority to conduct proceedings and issue a report and recommendation to the District Court on Movants' motion to dismiss, provided it is subject to de novo review.

By way of background, Refco, before it entered bankruptcy, was one of the largest commodities brokerage firms in the United States. On October 10, 2005, the company disclosed that certain Refco insiders were using money in customer

brokerage accounts to fund the firm's operating expenses and hide Refco's insolvency, all the while enriching themselves. Refco and its associated entities filed for voluntary Chapter 11 Bankruptcy in the Southern District of New York on October 17, 2005. Thereafter, on December 15, 2006, the Bankruptcy Court confirmed a proposed reorganization plan that, inter alia, created the Refco Litigation Trust, on behalf of which the Trustee (the plaintiff here) filed numerous litigation claims against various parties. On October 15, 2007, the Trustee filed a complaint in the Bankruptcy Court against the Movants, asserting two kinds of state law tort claims: fraudulent conveyance claims under the New York Debtor Creditor Law, and unjust enrichment claims under New York common law. See Compl. ¶¶ 60-63, 75-76. The gist of the claims is that the Movants, former executives at Refco, were coconspirators in the Refco fraud and, pursuant to that fraud, received $80 million from RGL, a Refco-affiliated entity. Id. ¶¶ 145-55. The Trustee seeks to avoid as fraudulent, or to recover as unjust enrichment, the money transferred from RGL to the Movants. Id. ¶¶ 153-55.

District courts have original jurisdiction over bankruptcy cases and all civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. Pursuant to 28 U.S.C. § 157(a), a district court may

refer actions within its bankruptcy jurisdiction to the bankruptcy court of that district. The Southern District of New York has a standing order in place that provides for automatic reference of bankruptcy cases to the bankruptcy court. See In re Standing Order of Reference Re: Title 11, 12 Misc. 32 (S.D.N.Y. Feb. 1, 2012).

There are two types of bankruptcy proceedings delineated in § 157: "'core proceedings,' which the bankruptcy court may 'hear and determine' and on which the court 'may enter appropriate orders and judgments,' § 157(b)(1), [and] 'non-core proceedings,' which the bankruptcy court may hear, but for which the bankruptcy court is only empowered to submit proposed findings of fact and conclusions of law to the district court for de novo review, § 157(c)(1)." In re Orion Pictures Corp., 4 F.3d 1095, 1100-01 (2d Cir. 1993). In Stern v. Marshall, the Supreme Court held that the state law tortious interference counterclaim before it could be finally adjudicated only by an Article III court and not by the bankruptcy court, even though the counterclaim was a "core" proceeding under § 157. The primary question here is whether the reasoning of Stern also makes it unconstitutional for the bankruptcy court to resolve state law fraudulent conveyance claims.[1]

---

[1] The Bankruptcy Court determined that the Trustee's fraudulent conveyance claims were statutorily core, and that the unjust

In reaching its conclusion in <u>Stern</u>, the Court held that:

> When a suit is made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789, and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts.

<u>Id.</u> at 2609 (internal quotation marks and citation omitted). Although bankruptcy courts still have the ability to finally decide so-called "public rights" claims that assert rights derived from a federal regulatory scheme and are therefore not the "stuff of traditional actions," as well as claims that are necessarily resolved in ruling on a creditor's proof of claim (e.g., a voidable preference claim), <u>see</u> <u>Stern</u>, 131 S. Ct. at 2611-18, those exceptions do not apply to the state law tortious interference counterclaim presented in <u>Stern</u> because it is a traditional "private rights" claim. <u>Id.</u> Because Supreme Court precedent, as discussed below, likewise indicates that the

---

enrichment claims were non-core as pled, without prejudice to the Trustee to replead. <u>See</u> <u>In re Refco Inc.</u>, Adv. Pro. No. 07-03060 (RDD) (Bankr. S.D.N.Y. Apr. 9, 2008); <u>see also</u> <u>In re Refco Inc. (Memphis Holdings)</u>, 461 B.R. 181, 184 (Bankr. S.D.N.Y. 2011) (holding that Trustee's unjust enrichment claim against Memphis Holdings defendants was statutorily core). Accordingly, since neither party contends the Bankruptcy Court will be entering final judgment on the Trustee's unjust enrichment claims, this Court need only address whether the Bankruptcy Court has the power to finally adjudicate the Trustee's fraudulent conveyance claims after <u>Stern</u>. That being said, the analysis would lead to the same result here for the Trustee's unjust enrichment claims as for his fraudulent conveyance claims.

5

Trustee's claims here are "private rights" claims based on common law, this Court concludes that only an Article III court may render final judgment on the Trustee's claims.

At the threshold, however, the Trustee argues that because the underlying adversary proceeding is only at the motion to dismiss stage, the Bankruptcy Court is merely ruling on a "pre-trial" matter that does not intrude on the District Court's sole authority to enter "final judgment." See Opposition to Motion of Sukhmeet "Micky" Dhillon, MSD Family Trust, and Eric Lipoff to Withdraw the Reference dated Nov. 28, 2011 ("Trustee Opp. Br.") at 7-9. Indeed, in ruling on a separate motion to dismiss in the underlying adversary proceeding filed by other defendants who did not join the instant motion to withdraw the reference, the Bankruptcy Court argued that the constitutional question was "not particularly meaningful" on a motion to dismiss, as an order denying the motion would not enter "final judgment" and an order granting the motion would be subject to the same de novo standard of review on a bankruptcy appeal as a report and recommendation in a "non-core" proceeding. See In re Refco Inc. (Memphis Holdings), 461 B.R. 181, 185 (Bankr. S.D.N.Y. 2011).[2]

_____

[2] The Bankruptcy Court, however, ultimately concluded that because Stern also implicates whether a bankruptcy court has the statutory power to issue a report and recommendation in a "core" proceeding where it lacks constitutional authority to enter final

This reasoning is flawed. It confuses the power to enter final judgment with the right to appeal. If there is no appeal, the grant of the motion to dismiss for failure to state a claim is a final judgment dismissing the claim and is given res judicata and collateral estoppel effect. See Teltronics Servs. v. L M Ericsson Comms., Inc., 642 F.2d 31, 34-35 (2d Cir. 1981) (holding judgment under Fed. R. Civ. P. 12(b)(6) is entitled to res judicata effect); Corbett v. MacDonald Moving Servs., Inc., 124 F.3d 82, 88 (2d Cir. 1997) (holding that collateral attacks on bankruptcy court's jurisdiction are barred by res judicata). But this cannot be proper unless the bankruptcy court had the power to render final judgment in the first place. See Kontrick v. Ryan, 540 U.S. 443, 455 (2004) (noting court should raise subject-matter jurisdiction sua sponte) (citing Masnfeld, C. & L.M. Ry. Co. v. Swan, 111 U.S. 379, 384 (1884) ("[T]he first duty of this court is, sua sponte, if not moved to it by either party, to examine the sufficiency of that plea, and thus to take care that neither the circuit court nor this court shall use the judicial power of the United States in a case to which the constitution and laws of the United States have not extended that power.")); see also In re Ortiz, 665 F.3d 906, 910-11 (7th Cir.

---

judgment, it needed to reach the issue of whether it could finally decide the Trustee's claims. See Memphis Holdings, 461 B.R. at 185-86.

2011) (noting that whether bankruptcy court has constitutional authority to enter final judgment also affects a court of appeals' direct appellate jurisdiction under 28 U.S.C. § 158(d)(2)). Thus, even at the motion to dismiss stage, the question of whether the Bankruptcy Court has jurisdiction to enter a final order arises, regardless of the standard of appellate review.

As previously noted, the heart of the Stern opinion rests on the distinction between "private rights" claims, the "stuff" of common law, over which only an Article III court can render final judgment, and "public rights" claims that assert claims "derived from" or "closely intertwined" with a federal regulatory scheme and that therefore can be fully adjudicated by an Article I bankruptcy court without intruding on the separation of powers set out by Article III. Stern, 131 S. Ct. at 2611-16. The Supreme Court first outlined how the "public rights" exception applied to the bankruptcy courts when it held in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982), that the Bankruptcy Act of 1978 unconstitutionally conferred Article III jurisdiction on the bankruptcy courts. Although the plurality and the concurrence disagreed over the scope of the "public rights" exception, a majority of the Court in Northern Pipeline agreed that the state common law claims

8

before it were not claims asserting "public rights." See id. at

69-72 (plurality opinion); id. at 90-91 (Rehnquist, J.,

concurring in the judgment); accord Stern, 131 S. Ct. 2611.

In further tracing the Supreme Court's development of

the "public rights" exception, the Stern Court relied heavily on

Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989), which held

that the Seventh Amendment right to a jury trial applied to

fraudulent conveyance actions. Id. at 36. Granfinanciera, as the

Stern Court explained, rejected the notion that fraudulent

conveyance actions were cases involving "public rights." See

Stern, 131 S Ct. at 2614 (citing Granfinanciera, 492 U.S. at 54-

55). According to the Stern Court, Granfinanciera "reasoned that

fraudulent conveyance suits were 'quintessentially suits at

common law that more nearly resemble state law contract claims

brought by a bankrupt corporation to augment the bankruptcy

estate than they do creditors' hierarchically ordered claims to a

pro rata share of the bankruptcy res.'" Id. (quoting

Granfinanciera, 492 U.S. at 56). Indeed, the Court in Stern

analogized the state law tortious interference counterclaim

before it to the fraudulent conveyance claim before the Court in

Granfinanciera to hold that the counterclaim was a "private

rights" claim that had to be adjudicated by an Article III Court.

Id. To now conclude that the very claim presented in

9

Granfinanciera - a fraudulent conveyance claim - is a "public rights" claim would be totally at odds with the Stern Court's analogy to Granfinanciera.

Further, like the tortious interference counterclaim in Stern, the Trustee's claims in this adversary proceeding "exist[] without regard to [the] bankruptcy proceeding." Stern, 131 S. Ct. 2618. The bankruptcy reorganization plan is already confirmed, and the fraudulent conveyance claims brought by the Refco Litigation Trust are simply intended to increase payouts to creditors under the confirmed plan. The Movants are sued as coconspirators in the Refco fraud. They have filed no proofs of claims or otherwise "consented" to the Bankruptcy Court's resolution of the Trustee's claims, see id. at 2614-18, even assuming arguendo that that would make a difference. These claims for fraudulent conveyance under New York statutory law are claims that seek "to augment the bankruptcy estate - the very type of claim that . . . must be decided by an Article III court." Stern 131 S. Ct. at 2616 (citing Granfinanciera, 492 U.S. 33; Northern Pipeline, 458 U.S. 50).[3]

---

[3] This is the conclusion already reached since Stern by several courts. See, e.g., In re Lyondell Chem. Co., No. 11 Civ. 8251 (DLC), 2012 WL 1038749, at *6-9 (S.D.N.Y. Mar. 29, 2012); In re Heller Ehrman LLP, 464 B.R. 348, 354 (N.D. Cal. 2011) ("Stern clearly implied that the bankruptcy court lacks constitutional authority to enter final judgment on . . . fraudulent conveyance claims . . . ."); In re Coudert Bros. LLP, No. 11-2785 (CM), 2011 WL 5593147, at *7-9 (S.D.N.Y. Sept. 23, 2011) (holding bankruptcy

This Court is mindful of the fact that the Bankruptcy Court overseeing the Refco bankruptcy reached the opposite conclusion. Memphis Holdings, 461 B.R. 181. Beyond all else, the Bankruptcy Court relied on the Supreme Court's dictum that the holding in Stern was "limited" and "narrow," and not intended to upset the division of labor between the Bankruptcy Courts and Article III courts, which had "historically" included bankruptcy courts entering final judgments on fraudulent transfer claims. See id. at 461 B.R. at 186-92. But quite aside from the fact that this alleged historical practice has existed, at most, for only a few decades, cautionary dicta and past practice do not overcome the logic of the Supreme Court's holding in Stern. This Court concludes that simple logic dictates unequivocally that fraudulent conveyance claims like those brought here are "private rights" claims that, under Stern and the Constitution, must be finally decided by an Article III Court.

Stern, however, does not resolve the question of whether a bankruptcy court has the statutory authority to issue proposed findings of fact and conclusions of law on those "core" claims - like the Trustee's fraudulent conveyance claims - where,

---

court lacked constitutional authority to finally decide Trustee's private state law claims, including, inter alia, fraudulent conveyance claim). But see Memphis Holdings, 461 B.R. at 186 (collecting bankruptcy court decisions that have split on whether Stern dictates that bankruptcy courts no constitutional authority to decide finally fraudulent transfer claims).

under Stern, it does not have the constitutional authority to issue final judgments. For non-core claims that are "related to" a bankruptcy proceeding, the statutory authority is clear: "the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." § 157(c)(1). For core claims, however, the Bankruptcy Code simply provides that a bankruptcy court "may enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1). Of course, § 157(b)(1) was enacted before Stern, when Congress still assumed that a bankruptcy court had the constitutional power to issue final judgments in all core proceedings as authorized by statute. Nonetheless, the result is that there is no express authority that authorizes a bankruptcy court to issue reports and recommendations in those core proceedings where the bankruptcy court lacks constitutional authority to issue final judgment.

This Court, however, in line with most other district and bankruptcy courts, concludes that a bankruptcy court does have the power (statutory and otherwise) to issue a report and recommendation on such claims. See Coudert Bros., 2011 WL

12

5593147, at *13; In re Containership Co. (TCC) A/S, No. 11-12622

(SHL), 2012 WL 443716, at *11 (Bankr. S.D.N.Y. Feb. 10, 2012);

Memphis Holdings, 461 B.R. at 192-94; see also In re Canopy

Financial, Inc., 464 B.R. 770, 773-75 (N.D. Ill. 2011); Heller

Ehrman, 464 B.R. at 355-57; In re Mortgage Store, Inc., 464 B.R.

421, 426-28 (D. Hawai'i 2011); In re Soporex, Inc., 463 B.R. 344,

365 (Bankr. N.D. Tex. 2011). In their origin, bankruptcy courts

were court-appointed "referees" who functioned much as magistrate

judges to assist the district courts in carrying out their work.

See Northern Pipeline, 458 U.S. at 53. After Northern Pipeline

largely eviscerated Congress' attempt to create formal autonomous

bankruptcy courts, see id.; see generally Troy A. McKenzie,

Judicial Independence, Autonomy, and the Bankruptcy Courts, 62

Stan. L. Rev. 747, 757-66 (2011), Congress returned to the

previous system of bankruptcy judges assisting the district

courts, by enacting the Bankruptcy Amendments and Federal

Judgeship Act of 1984, codified in 11 U.S.C. § 157, pursuant to

which bankruptcy courts had authority only over the cases

referred to them by the District Courts. See 11 U.S.C. § 157(a)

(district court can refer bankruptcy cases to bankruptcy courts);

28 U.S.C. § 1334 (district courts have original jurisdiction for

all bankruptcy cases); Lyondell Chem., 2012 WL 1038749, at *4.

Although the district courts could withdraw the reference,

13

nevertheless, Congress, in enacting § 157 clearly "wanted Bankruptcy Judges to finally adjudicate bankruptcy-related matters whenever Article III permitted them to do so, and to issue recommended findings subject to de novo review in the District Court whenever it did not." Coudert Bros., 2011 WL 5593147, at *13. These circumstances thus create one of the rare exceptions to the "plain meaning" rule of statutory construction. To the extent that, as a result of Stern, the power of a bankruptcy court to issue a final judgment in those "core" cases involving "private rights" is no longer permissible, effect should be given to Congress' clear intent that, whenever a bankruptcy court lacks the power to render a final judgment, it should render a report and recommendation. See Memphis Holdings, 461 B.R. at 193.

Indeed, it is by no means obvious that legislative permission is needed for this to occur. In referring bankruptcy matters to the bankruptcy court, a district court may inherently have the same right to require that the bankruptcy court prepare a non-binding report and recommendation to assist the district court as it might require of a magistrate judge or special master -- provided the report is subject to de novo review. To this end, the Southern District of New York, on February 1, 2012, amended

14

the Standing Order referring bankruptcy cases to the Bankruptcy

Court to provide as follows:

> If a bankruptcy judge or district judge determines that
> entry of a final order or judgment by a bankruptcy judge
> would not be consistent with Article III of the United
> States Constitution in a particular proceeding referred
> under this order and determined to be a core matter, the
> bankruptcy judge shall, unless otherwise ordered by the
> district court, hear the proceeding and submit proposed
> findings of fact and conclusions of law to the district
> court.  The district court may treat any order of the
> bankruptcy court as proposed findings of fact and
> conclusions of law in the event the district court concludes
> that the bankruptcy judge could not have entered a final
> order or judgment consistent with Article III of the United
> States Constitution.

In re Standing Order of Reference Re: Title 11, 12 Misc. 32

(S.D.N.Y. Feb. 1, 2012). Such an order, this Court concludes, is

well within the inherent powers of a federal district court.

        Having determined that the Bankruptcy Court has the

authority to issue a report and recommendation on the underlying

motion to dismiss, there is no reason for the Court to withdraw

the reference on the underlying motion or the adversary

proceeding as a whole. This is not a matter of mandatory

withdrawal or of sua sponte withdrawal by the district court.

Rather, it is a matter of permissive withdrawal under § 157(d).

To determine whether a party has shown "cause" for permissive

withdrawal under § 157(d), the Second Circuit, prior to Stern,

directed that the district court weigh several factors:

> (1) whether the claim is core or noncore, (2) what is the
> most efficient use of judicial resources, (3) what is the

15

delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors.

In re Burger Boys, Inc., 94 F.3d 755, 762 (2d Cir. 1996) (paraphrasing Orion, 4 F.3d at 1101). This can still be applied after Stern, as long as the bankruptcy court only retains the power to issue reports and recommendations in private rights cases.

The fraudulent conveyance claims here presented are core claims. The Bankruptcy Court has already spent three years working on this adversary proceeding and is intimately familiar with its details. While it will now have to issue a report and recommendation, rather than a final judgment, and the district court will have to review the matter de novo, experience strongly suggests that having the benefit of the report and recommendation will save the district court and the parties an immense amount of time. And, while Movants cite to their jury demand as a reason to withdraw the reference now, the Court may withdraw the reference if and when a trial is necessary, rather than at this early stage of deciding a motion to dismiss.

Accordingly, the Court directs that this adversary proceeding be now returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order.

SO ORDERED.

_____

16

                                        JED S. RAKOFF, U.S.D.J.

Dated:      New York, New York
            May 9, 2012

                                17